UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JIAYI GENG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02458-JRS-DLP |
| | ) | |
| CARLOS DEL TORO, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

This matter comes before the Court on the Plaintiff's Motion to Reconsider Denial of Motion to Compel, Dkt. [54]. Having considered the Motion to Reconsider, the accompanying briefs, the record of the case, and the relevant law, the Court **DENIES** the Plaintiff's Motion to Reconsider.

## I. Background

On September 23, 2020, *pro se* Plaintiff Geng initiated this litigation against the Defendant, Secretary of the Navy, for employment discrimination pursuant to Title VII of the Civil Rights Act of 1964. (Dkt. 1). As part of discovery, Plaintiff served on Defendant requests for admission, requests for production, and interrogatories. (Dkt. 37). Plaintiff took issue with Defendant's response to several of her discovery requests and, on October 11, 2021, filed a motion to compel Defendant's response. (Id.). On December 3, 2021, the Court issued an Order denying Plaintiff's motion to compel. (Dkt. 50). Specifically, the Court found the Plaintiff's requests for production concerning Ms. Kate Hawkins irrelevant to this

lawsuit because Plaintiff was unable to demonstrate that "her and Kate Hawkins were engaged in similarly situated conduct." (Dkt. 50 at 4-6). The Court also found the Plaintiff's interrogatory concerning her meeting with the FBI irrelevant. (Id. at 6-7). Plaintiff now seeks reconsideration of the Court's ruling on two of the discovery requests, specifically, a request for production regarding Leave Without Pay ("LWOP") approval records for Kate Hawkins and an interrogatory seeking explanation for the FBI's decision to summon her for an investigatory meeting in March 2019. (Dkt. 54). On January 12, 2022, Defendant filed a response, and Plaintiff filed her reply on January 19, 2022. (Dkts. 55, 56).

## II. Legal Standard

Motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Gentry v. Floyd Cty.*, No. 4:14-cv-00054-RLY-TAB, 2016 WL 4088748, at *2 (S.D. Ind. July 25, 2016) (citing *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)). "A manifest error occurs when the district court commits a wholesale disregard, misapplication, or failure to recognize controlling precedent." *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015). A court may also reconsider its prior decision if it misunderstands a party's argument or overreaches by deciding an issue not properly before it. *United States v. Ligas*, 549 F.3d 49, 501 (7th Cir. 2008). Motions for reconsideration do not give a party the opportunity to rehash old arguments or to present new arguments or evidence that could and should have been presented to the district court prior to the judgment. *Uccardi v. Lazer Spot, Inc.*, 390 F. Supp. 3d

911, 913 (N.D. Ill. 2019); *Davis v. Carmel Clay Sch.*, 286 F.R.D. 411, 412 (S.D. Ind. 2012). Whether to grant a motion to reconsider is committed to the sound discretion of the district court. *Caisse Nationale*, 90 F.3d at 1270.

## III. Discussion[1]

In her Motion to Reconsider, Plaintiff requests the Court to reconsider its previous decision to deny one of her request for production and one of her interrogatory request. The Court will address each in turn.

> **Plaintiff's Second Requests for Production of Documents No. 8** seeks "All records of Shawn Graber's[2] approval of Kate Hawkins' request for LWOP from January 1, 2016 to December 31, 2018."

(Dkt. 54 at 1). Plaintiff asserts that the Court misunderstood her motion to compel argument based upon a misreading of her reply brief. (Dkt. 54 at 1). In her reply, the Plaintiff argued there was an "[u]ndeniable contradiction between Hawkins' deposition when she said she submitted FMLA documents to Human Resources… vs. Defendant Response to Recovery that says NO FMLA was invoked." (Dkt. 47 at 2). Presuming Plaintiff's reference to "Defendant Response to Recovery" to be Defendant's responses to the Requests for Admission, the Court found no contradiction. In her deposition, Kate Hawkins testified that she submitted her FMLA paperwork to either her supervisor, Shawn Graber, or to human resources. In the Defendant's response to Plaintiff's Request for Admission No. 9[3], he stated

---

[1] The procedural history relevant to the Plaintiff's Motion to Reconsider the Court's December 3, 2021 Order is sufficiently set forth in that Order, and will not be restated here. (Dkt. 50).
[2] Mr. Graber was the Supervisor for both Plaintiff and Ms. Hawkins. (Dkt. 37 at 2; Dkt. 4).
[3] Request for Admission No. 9 states: "Admit or deny that Ms. Kate Hawkins submitted one or more FMLA document(s) to Mr. Shawn Graber prior to October, 2016. (Dkt. 37-1 at 3).

that he could not admit or deny that Plaintiff submitted FMLA paperwork to Mr. Graber. (Dkt. 37-1 at 3-4; Dkt. 47 at 2; Dkt. 50 at 5). The Court failed to find a contradiction.

In the motion to reconsider, Plaintiff now explains that when referencing "Defendant Response to Recovery," she was referring to Defendant's responses to her Request for Documents. (Dkt. 54 at 1-2). In Request for Production No. 9,[4] the Plaintiff is seeking "[e]very FEMLA [*sic*] documents [*sic*] Kate Hawkins had filled-out and submitted to Shawn Graber from the period of January 1, 2016 to December 31, 2018." (Dkt. 43-4 at 4). In response to this request, the Defendant presented a number of objections, including relevance, proportionality, and overly broad, among others. (Id.). The Defendant also noted that the alleged misconduct of of the Plaintiff – failure to maintain productivity during periods that she was being paid to work - and Ms. Hawkins – misuse of LWOP - are not similar conduct, and thus the Plaintiff's request for documents was both vexatious and harassing. The Defendant further noted that Ms. Hawkins "did not invoke FMLSA leave for the LWOP hours requested in 2016…." (Dkt. 43-4 at 5).

From the Court's review of the deposition testimony by Ms. Hawkins and the Defendant's response to the request for documents, the Court does not find a contradiction. While the Court appreciates Plaintiff's argument, the Defendant did not suggest in his response that Ms. Hawkins did not take FMLA leave in 2016, but

[4] The Court found discovery responses related to Kate Hawkins' FMLA documents in Request for Admission No. 9 and Request for Production of Documents No. 9. (*See* Dkts. 37-1 at 3 and Dkts. 43-4 at 4-5).

instead noted that Ms. Hawkins did not invoke FMLA leave for the same hours that were covered by LWOP. (Dkt. 43-4 at 5; Dkt. 47-1 at 2-3; Dkt. 54). In addition, Defendant's objection related to the relevancy of this Request for Production of Documents is well taken. Plaintiff has failed to establish Kate Hawkins as a comparator, and thus any request for employment records involving Kate Hawkins use of FMLA or LWOP is irrelevant.

Plaintiff's remaining contentions present new arguments and the introduction of evidence that was previously available that could have been presented to the Court prior to its ruling.[5] (Dkt. 54 at 2; Dkt. 47-1; Dkt. 47-2; Dkt. 44-2 at 5; Dkt. 44-19; Dkt. 44-32). Thus, the Court finds Plaintiff has not provided a basis for reconsideration. She has not identified any newly discovered evidence or highlighted a manifest error of law or fact. Rather, Plaintiff's briefing demonstrates an effort to present new legal theories and evidence that could and should have been brought to the Court's attention at the time it initially ruled on the Plaintiff's motion to compel. Accordingly, Plaintiff's request for reconsideration of the Court's ruling on Request for Documents No. 8 is **denied**.

> **Plaintiff's Second Set of Interrogatories No. 14** asks: "Explain why David Carr and Mr. Huser from FBI waited until March 2019 to summon Plaintiff for an investigation meeting when Justin Mann reported Plaintiff's "sensitive questions" to David Carr in September, 2017?"

[5] Plaintiff contends that "in reality," there was a fourth reason for her removal – past disciplinary action related to her inaccurately reporting time and attendance – and that this reason should be weighed more heavily in considering the issue of comparator. (Dkt. 54 at 2). Plaintiff also alleges, for the first time, that Mr. Graber set more stringent requirements for her to use Leave Without Pay than Ms. Hawkins, that Plaintiff's medical condition was not taken into account when considering mitigating factors for disciplinary action, and that Ms. Hawkins contradicted herself on another occasion. (Id. at 2-3).

(Dkt. 54 at 3).

The Court denied Plaintiff's motion to compel Defendant's response to Interrogatory No. 14, finding that Plaintiff had failed to establish the relevancy of this interrogatory. (Dkt. 50 at 7). Specifically, the Court was unable to draw a "connection" between the Plaintiff's claims and her meeting with the FBI to demonstrate a retaliatory motive for the Defendant's actions. (Id.).

Plaintiff asserts that she could have done a better job in explaining her argument and asks for another chance to explain why this interrogatory is relevant. (Dkt. 54 at 3-4). In the motion to reconsider, Plaintiff explains that the FBI's delayed investigation into her was an effort to come up with a "more legitimate" reason for the Defendant to terminate her employment. (Dkt. 54 at 4). Plaintiff explains:

> By the end of 2018, Plaintiff has filed three EEO Complaints, first one in July, 2017, the second one in March, 2018 and the third one in October, 2018. Two of the EEO Complaints were filed against Mr. Graber as a [*sic*] the principle harasser, while the third one was filed against Mr. Justin Mann and Mr. Nigel Wasil, who although not in the same branch as Plaintiff or Mr. Graber, still falls under Mr. Voigschild's chain of command as his direct employee. From Mr. Voigschild's point of view, he has received three EEO Complaints against three of his employees from the same complainant in less than 1.5 year and got really "fed up". A more "legitimate" reason to get rid of a Department of Defense employee would be to find some "holes" related to security reasons. That was Defendant's first tactic, to invoke FBI and NCIS to "investigate" an incident happened back in September, 2017. Only when that failed (i.e. FBI and NCIS could not find dirt on the Plaintiff), did the Defendant invoke the second, much less convincing method of getting rid of Plaintiff (i.e.: failed to follow instruction, thus wasting government 18 hours in a two-day period). This logic works from the temporal point of view because:

> 1. If the “sensitive questions” Plaintiff had asked during an informational briefing back in September, 2017 in front of 30+ other Crane employees were so inappropriate that it raised to national security level, why did FBI/NCIS waited until March, 2019 to investigate Plaintiff?
>
> 2. On April 10, 2019, Deputy Department Head Mr. Voigschild held a pre-removal meeting with Plaintiff, and subsequently signed her removal proposal the following day [Filing 47 at 3]. This is less than one month after the FBI/NCIS investigation with Plaintiff. Because FBI/NCIS did not find anything inappropriate on Plaintiff, Defendant had to move to the next step of issuing Plaintiff a Removal Proposal for failing to follow instruction, thus wasting government 18 hours.

(Dkt. 54 at 3-4). In response, the Defendant maintains that the Plaintiff was terminated for refusing to follow directions and work stoppage in late 2018, and that this new argument is Plaintiff's "admitted effort to get a second bite at the apple." (Dkt. 55 at 2-3). In her reply, Plaintiff maintains that Defendant's argument does not undermine her contention that there is a connection between the FBI/NCIS interrogation and Mr. Voigschild's alleged retaliation motivation. (Dkt. 56).

Because Plaintiff's arguments regarding Mr. Voigschild's reason for termination are new and they were not raised in her initial briefing, the Court finds that these arguments are improper. As the Seventh Circuit explained in *Frietsch v. Refco, Inc.*, a motion for reconsideration is not a vehicle to enable a party to complete presenting her case after the Court has ruled against her. 56 F.3d 825, 828 (7th Cir. 1995). In other words, a motion to reconsider is not intended to afford litigants a "second bite at the apple," but rather to afford an opportunity for relief in extraordinary circumstances. *First Nat'l Bank in Manitowoc v. Cincinnati Ins. Co.*,

321 F. Supp. 2d 988, 992 (E.D. Wis. 2004). Accordingly, Plaintiff's request for reconsideration of the Court's ruling on Interrogatory No. 14 is **denied**.

## IV. Conclusion

Given the motion to reconsider does not identify newly discovered evidence or a manifest error of law or fact, but instead focuses entirely on information available to the Plaintiff at the time the motion to compel was originally resolved, the Plaintiff's Motion to Reconsider, Dkt. [54], is **DENIED**.

So ORDERED.

Date: 6/27/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

JIAYI GENG
947 S. Baldwin Dr.
Bloomington, IN 47401